IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JONATHAN VALENTIN,<br><br>　　　　　　　Plaintiff,<br><br>　　v.<br><br>KILOLO KIJAKAZI,[1]<br>Commissioner of Social Security,<br>　　　　　　　Defendant | :<br>:<br>:<br>:　CIVIL ACTION<br>:<br>:<br>:　No. 20-cv-05239-RAL<br>:<br>:<br>: |

**RICHARD A. LLORET**　　　　　　　　　　　　　　　　　　　　　January 5, 2023
**U.S. Magistrate Judge**

## MEMORANDUM OPINION

　　The Commissioner of Social Security, through the decision of an Administrative Law Judge ("ALJ"), denied Jonathan Valentin's ("Mr. Valentin") application for Social Security disability benefits. The ALJ determined that Mr. Valentin was not disabled under the definition of the Social Security Act ("SSA"). R. 46.[2] Plaintiff requests review of the ALJ's decision. Doc. No. 37 ("Pl. Br."), at 12. Because I find that the ALJ did not commit error, I affirm the ALJ's decision.

## PROCEDURAL HISTORY

　　In 2017, Plaintiff filed an application for a period of disability and disability insurance benefits ("DIB"). In his application, Plaintiff alleged a disability onset date of May 30, 2017, citing a diagnosis of Cervical Disc Disorder with Radiculopathy, Cervical Myelopathy with Cervical Radiculopathy, Cervical Myofascial Pain Syndrome, Foraminal Stenosis, neck and bilateral shoulder pain, shoulder muscle strain and

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted for Andrew Saul as Defendant. No further action need be taken to continue this suit by reason of the last sentence of § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).
[2] All references to the administrative record will be listed as "R. ____". The administrative record is document number fifteen on ECF.

sprain, chronic back and neck pain, and right knee pain. R. 88-89. In 2017, Mr. Valentin's application was denied at the initial level of review. R. 97. In January 2018, Plaintiff requested a hearing before an ALJ. R. 101. The request was granted, and a hearing was held in April 2019, at which Mr. Valentin was represented by counsel. R. 125. Mr. Valentin and a vocational expert testified at the hearing. R. 61-87. The ALJ found Mr. Valentin was not disabled under the SSA. R. 46. Mr. Valentin filed an appeal in this court. Doc. No. 2. In September 2021, the matter was reassigned to me. Doc. No. 19. Upon a showing of good cause, Mr. Valentin filed an amended brief. Doc. No. 37. The Commissioner responded. Doc. No. 39.

## FACTUAL BACKGROUND

### A.  The Claimant's Background

Mr. Valentin was 34 years old at the onset date of the alleged disability, making him a "younger person" under the regulations. R. 88; 20 C.F.R. §§ 404.1563. He has a GED and can understand English. R. 94, 205. From March 2016 to the alleged onset date, May 30, 2017, Mr. Valentin was unemployed. R. 207. Prior to this period of unemployment, Mr. Valentin worked as an order picker with multiple companies from March 2003 through March 2016. R. 208. As an order picker, Mr. Valentin processed orders and used a forklift to load and unload materials. R. 208, 213-20.

### B.  The ALJ's Decision

The ALJ found that Mr. Valentin was not disabled under the SSA from May 30, 2017 through September 8, 2017. R. 46. In reaching this decision, the ALJ made the following findings of fact and conclusions of law pursuant to Social Security's five-step sequential evaluation process.[3]

---

[3] An ALJ evaluates each case using a sequential process until a finding of "disabled" or "not disabled" is reached. The sequence requires an ALJ to assess whether the claimant: (1) is engaging in substantial gainful activity; (2) has a severe "medically determinable" physical or mental impairment or combination

Prior to step one, the ALJ determined that Mr. Valentin was last insured on September 30, 2017, pursuant to the insured status requirements of the SSA.[4] R. 48. At step one, the ALJ confirmed that Mr. Valentin had not engaged in substantial gainful activity during the alleged disability period. R. 48. At step two, the ALJ determined that Mr. Valentin had two severe impairments: cervical myofascial pain syndrome and cervical disc disorder with radiculopathy. *Id*. At step three, the ALJ compared Mr. Valentin's impairments to those contained in the Social Security Listing of Impairments ("listing").[5] The ALJ found that Mr. Valentin's impairments, individually and jointly, did not meet any listing criteria or medically equate the severity of a listing, including that of listing 1.04. R. 49. In 2017, Listing 1.04 related to spinal disorders "resulting in compromise of a nerve root. . . or the spinal cord. *See* 20 C.F.R. Pt. 404, Subpt. P., App. 1 (effective March 27, 2017 to Dec. 15, 2017).

Prior to reviewing step four, the ALJ determined that Mr. Valentin had the residual functional capacity ("RFC") to perform sedentary work with a restriction "to no more than routine and repetitive tasks" and that Mr. Valentin needed the flexibility to "sit or stand as needed." *Id*. at 49 (citing 20 C.F.R. § 404.1567(a)). The ALJ determined that Mr. Valentin was unable to perform any past relevant work, due to his prior work falling under "medium unskilled work (SVP 2) actually performed at heavy." R. 53. The

---

of impairments; (3) has an impairment or combination of impairments that meet or equal the criteria listed in the social security regulations and mandate a finding of disability; (4) has the residual functional capacity to perform the requirements of his past relevant work, if any; and (5) is able to perform any other work in the national economy, taking into consideration his residual functional capacity, age, education, and work experience. See 20 C.F.R. §§ 404.1520(a)(4)(i)–(v), 416.920(a)(4)(i)–(v).

[4] When an applicant is seeking disability insurance benefits ("DIB") the ALJ must determine the applicant's insured status. 20 C.F.R. § 404.101(a). If an applicant is "neither fully nor currently insured, no benefits are payable based on [the applicant's] earnings." *Id*. The applicant is able to recover DIB only through their last insured date. 42 U.S.C. § 423(a).

[5] The regulations contain a series of "listings" that describe symptomology related to various impairments. *See* 20 C.F.R. Pt. 404, Subpt. P., App. 1. If a claimant's documented symptoms meet or equal one of the impairments, "the claimant is conclusively presumed to be disabled." *Bowen v. Yuckert*, 482 U.S. 137, 141 (1987). If not, the sequential evaluation continues to step four, where the ALJ determines whether the impairments assessed at step two preclude the claimant from performing any relevant work the claimant may have performed in the past. *Id*.

ALJ also determined that Mr. Valentin was a younger individual, per 20 C.F.R. § 404.1563; has at least a high school education and can communicate in English, per § 404.1564; and that transferability of skill was not an issue since Mr. Valentin's previously held positions fell under unskilled work, per § 404.1568. R. 53. At step five, the ALJ determined that there were jobs in "significant numbers in the national economy" that Mr. Valentin could have performed, including the job of a dental implant polisher, dowel inspector, or circuit board layout taper. R. 53-54. The ALJ ultimately concluded that Mr. Valentin was not disabled during the insured period. R. 54.

### STANDARDS OF REVIEW

My review of the ALJ's decision is deferential. I am bound by his findings of fact to the extent those findings are supported by substantial evidence in the record. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000) (*citing Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999)). Accordingly, my review of the ALJ's findings of fact is limited to determining if substantial evidence supports the decision. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999) (citing 42 U.S.C. § 405(g)). If the ALJ's factual conclusion is supported by substantial evidence, his disability determination must be upheld. *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005); *see also* 42 U.S.C. § 405(g); *Dickinson v. Zurko*, 527 U.S. 150, 164 (1999).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Substantial evidence "is more than a mere scintilla but may be less than a preponderance." *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988). I must rely on the record developed during the administrative proceedings along with the pleadings in making my determination. *See* 42 U.S.C. § 405(g). I may not weigh the evidence or substitute my own conclusions

4

for those of the ALJ. *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011). I must also defer to the ALJ's evaluation of evidence, assessment of the witnesses, and reconciliation of conflicting expert opinions. *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 506 (3d Cir. 2009).

The ALJ's legal conclusions and application of legal principles are subject to plenary review. *See Krysztoforski v. Chater*, 55 F.3d 857, 858 (3d Cir. 1995). I must determine whether the ALJ applied the proper legal standards in reaching the decision. *See Coria v. Heckler*, 750 F.2d 245, 247 (3d Cir. 1984). Accordingly, I can overturn an ALJ's decision based on an incorrect application of a legal standard even where I find that the decision otherwise is supported by substantial evidence. *Payton v. Barnhart*, 416 F. Supp. 2d 385, 387 (E.D. Pa. 2006) (citing *Friedberg v. Schweiker*, 721 F.2d 445, 447 (3d Cir. 1983)).

## DISCUSSION

Mr. Valentin appeals *pro se*. Doc. No. 37, at 12. He argues that the record does not support the ALJ's holding, because the ALJ "misinterpreted the medical evidence". *Id*. at 10-11. The Commissioner argues there is substantial evidence in the record to support the ALJ's decision. Doc. No. 39, at 1. I find that the ALJ's decision accounts for all the evidence of record, is soundly reasoned, and free from legal error. I will review only the steps that required the ALJ to review medical evidence, since Mr. Valentin specifies an alleged error in weighing the medical evidence.[6]

At step two, the ALJ determined that Mr. Valentin had two severe impairments: Cervical Myofascial Pain Syndrome and Cervical Disk Disorder with Radiculopathy. R.

---

[6] I will not review the ALJ's calculation of Mr. Valentin's insured period, because Mr. Valentin acknowledges September 30th, 2017 as the end date to his insurable period. Doc. No. 37, at 8. I will also not review step one, because the determination is based on employment history, not medical history. *See* 20 C.F.R. § 404.101(a).

48. A severe impairment occurs when there is an "impairment or combination of impairments which significantly limits [the applicant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). Basic work activities include physical functions (such as walking, sitting, or carrying); "[c]apacities for seeing, hearing, and speaking;" following instructions; judgement; appropriate responses to workplace interactions; and response to "changes in a routine work setting." 20 C.F.R. § 416.922.

The ALJ found that "[t]he above medically determinable impairments significantly limit the ability to perform basic work activities as required by SSR 85-28." R. 48. SSR 85-28 is a program policy statement to help "clarify the policy for determining when a person's impairment(s) may be found 'not severe'". *Titles II & Xvi: Med. Impairments That Are Not Severe*, SSR 85-28 (S.S.A. 1985).

The ALJ explained that Mr. Valentin's chronic knee pain was not a severe impairment, citing to an examination performed in August 2017. R. 48. The examining physician noted that Mr. Valentin had a normal gait, with no swelling or tenderness. R. 335. The ALJ also cited to a January 2018 x-ray report, which indicated that the x-ray showed no abnormalities to the knee. R. 363. The ALJ noted that Mr. Valentin also "admitted he engaged in weight lifting five to six times per week." R. 48 (citing R. 334). This admission is dated March 21, 2017—three months prior to the alleged onset date in May 2017. R. 334. In sum, the ALJ appropriately cited evidence that would allow a reasonable person to make the determination that the knee pain did not affect Mr. Valentin's ability to perform basic work activities during the insured period and, thus, was not a severe impairment.

The ALJ also reviewed medical records from 2018—the year after the insurable period—to see if there was longevity to any of the 2017 impairments. R. 49. The ALJ determined that the February 2018 medical records, which contained information on a

6

flexible cystoscopy with circumcision, indicated a "subsequent temporary, non-severe impairment [that] was not a medically determinable impairment during the relevant adjudicatory period." R. 370, 377. The ALJ reviewed the medical records summarizing examinations performed during the disability period and did not find reference to the medical issues addressed in the 2018 surgical procedure. R. 49. The ALJ's findings were a reasonable assessment of the record, because there is no evidence connecting the 2018 surgery to the 2017 medical ailments.

At step three, the ALJ determined that Mr. Valentin's impairments did not meet one of the listed impairments. *Id*. The ALJ's analysis outlined the evidence needed to establish an impairment under Listing 1.04. R. 49 (citing 20 CFR Part 404, Subpart P, Appx. 1). The ALJ, correctly, determined that nothing in the record indicated "cord or nerve root compression", "sensory or reflex loss", "abnormalities in strength or gait", or "focal neurological deficits." R. 49. I find the step three determination was supported by substantial evidence.

Prior to step four, the ALJ determined Mr. Valentin's RFC. R. 45-55. He found that Mr. Valentin's RFC permitted sedentary work with a restriction "to no more than routine and repetitive tasks" and that Mr. Valentin needed the flexibility to "sit or stand as needed." *Id*. at 49 (citing 20 C.F.R. § 404.1567(a)). The ALJ spent approximately three and a half pages reviewing the evidence in the record; the ALJ analyzed Mr. Valentin's hearing testimony, Mr. Valentin's function report, office treatment records, a radiology report, physical therapy reports, medical reports postdated September 30, 2017, and a disability determination explanation created by Dr. Davit Hutz. R. 49-53. The ALJ explained that he weighed the objective medical evidence on the record more than Mr. Valentin's subjective testimony, because "the records do not support the severity of [Mr. Valentin's] allegations." R. 52. The ALJ also explained that he

7

considered Dr. Davit Hutz's opinion as "partially persuasive." R. 52-53. The ALJ agreed with Dr. Hutz that Mr. Valentin "is exertionally limited due to his cervical spine impairment with radiculopathy". R. 53. In his Disability Determination Explanation, Dr. Hutz recommended a medically determinable impairment due to a spine disorder corresponding to Listing 1.04. R. 90-91. He opined that Mr. Valentin could occasionally lift 20 pounds; frequently lift 10 pounds; sit, stand, or walk for about 6 hours; had an unlimited ability to push or pull. R. 91-92. He also opined Mr. Valentin had postural limitations, because he recommended that Mr. Valentin never climb ladders, ropes, or scaffolds; but could occasionally climb ramps or stairs, balance, stoop, kneel, crouch, or crawl. R. 92. Dr. Hutz also found environmental limitations, opining that Mr. Valentin should avoid concentrated exposure to extreme cold, wetness, vibration, and hazards (such as machinery or heights). R. 93. Even though Dr. Hutz opinion included Mr. Valentin had these limitations, Dr. Hutz ultimately opined that Mr. Valentin could perform light, unskilled work even with any impairments caused by the medical afflictions. R. 94. The ALJ concluded his analysis with a clear summary of all of the longitudinal evidence used to show that his RFC assessment was appropriate. R. 52. There is substantial evidence in the record to support this conclusion, and no evidence that contradicts the ALJ or Dr. Hutz' conclusions.

  At step five, the ALJ determined that there were alternative jobs present in significant numbers within the national economy that Mr. Valentin could have performed. A page of the opinion is dedicated to reviewing alternative work available and Mr. Valentin's capacity to perform this work. R. 53-54. The review included analysis of the vocational expert's testimony, which the ALJ concluded was consistent with "the Dictionary of Occupational Titles." R. 54. The vocational expert testified that Mr. Valentin had the capacity to perform as a dental implant polisher, a dowel inspector, or

a circuit board layout taper. R. 85. Dr. Hutz' conclusion supports the opinion of both the ALJ and the vocational expert. *See* R. 94 (finding that Mr. Valentin was not disabled, because there were at least three other occupations available—picker, bin packer, and sorter—that Mr. Valentin could have performed at the reduced work-load level). There is substantial evidence within the record to support the ALJ's determination.

## CONCLUSION

Because I find no error, the decision of the ALJ is affirmed, and the appeal dismissed. I will enter an Order and Judgment accordingly.

BY THE COURT:

*s/Richard A. Lloret*
**RICHARD A. LLORET**
**U.S. Magistrate Judge**